UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    File No. 1:12-cr–58-jgm |
| | : |
| WILLIAM HENDRICKSON,<br>    Defendant. | :<br>:<br>: |

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS
(Doc. 13)

I.   Introduction

Defendant William Hendrickson ("Hendrickson" or "Defendant") is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  (Doc. 10.)  Hendrickson moves to suppress all evidence and statements obtained as a result of a vehicle stop in Rutland on April 1, 2012, arguing his Fourth Amendment constitutional rights were violated.  (Doc. 13.)  The government opposes the motion.  (Doc. 21.)  The Court held an evidentiary hearing on October 10, 2012, and heard testimony from Supervisory Special Agent James Mostyn, Sergeant Matthew Prouty, and Special Agent Thomas Jusianiec.  Neither Hendrickson nor the government filed further briefing following the hearing.

For the reasons stated below, the Court denies Defendant's motion.

II.  Background

The following facts are taken from the evidence presented at the October 10 hearing, and from other documents submitted as evidence by the parties.  On April 1, 2012, at approximately 11:00 p.m., Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Supervisory Special Agent, and Resident Agent in Charge of Vermont, James Mostyn ("Agent Mostyn") interviewed a cooperating source ("CS") who contacted him to provide information.  Suppression Hr'g Tr. at 4,

Oct. 10, 2012 ("Hr'g Tr."). The CS lived in Rutland, was involved in prostitution, narcotics, and robberies, and had used heroin that day but was lucid and articulate.[1] Id. at 5, 24-26. The CS informed Mostyn that "Ghost," whose real name was Will Hendrickson,[2] was in possession of a firearm, had committed robberies of drug dealers in the past, and was looking to commit another robbery. Id. at 6. The CS had participated in some of those robberies with Hendrickson. Id. at 17. Agent Mostyn determined through a record check that Hendrickson had a felony record. Id. at 7. The CS informed Agent Mostyn that Hendrickson was dating Courtney Samplatsky and they were staying at the Orchard Motel on Route 4 in Mendon just outside Rutland. Id. at 8-9, 18. The CS stated Hendrickson was in possession of a silver handgun with black tape on the handle which he carried in a backpack and that Hendrickson and Samplatsky traveled in Samplatsky's red SUV. Id. at 10-11. A records check for Samplatsky by Rutland City Police returned a red Trailblazer registered to her and a drive-by of the Orchard Motel confirmed a red Trailblazer in the parking lot. Id. at 11-12.

Agent Mostyn testified he was concerned for the safety of the community, given the confirmation that Hendrickson was a convicted felon and the CS's information that he was armed and looking to commit a robbery. Hr'g Tr. at 12. He summoned ATF agents to Rutland and directed the CS to contact Hendrickson via text message regarding a robbery target. Id. at 12-13. The CS, at Agent Mostyn's direction, engaged in a text dialogue to set up a meet location for that night. Id. at 13. Agent Mostyn testified he directed the CS to ask if Hendrickson had a "blick," a

---

[1] The CS did not receive anything in exchange for providing information to law enforcement and she had no charges pending against her at the time. Hr'g Tr. at 25.

[2] The CS struggled with recalling the last name, first stating it was Hendricks, then eventually stating it was Hendrickson. Hr'g Tr. at 6.

street term for firearm, to which he affirmatively replied, and Hendrickson asked whether the target was alone and/or armed, to which Agent Mostyn directed the CS to answer no. Id. at 14.

Agent Mostyn then coordinated with the Rutland City Police to surveil the motel. Agent Mostyn, a City police officer, and the CS were across the street from the motel in Agent Mostyn's car. Hr'g Tr. at 14, 21. Other units were stationed down Route 4 towards Rutland. Id. Agent Mostyn directed the CS to text Hendrickson that she was ready, he responded he was on his way and had a ride, the motel door opened, and a male and female, one of which the CS identified as "Will," entered the red Trailblazer and drove toward Rutland. Id. at 15. The CS also stated that she saw Will put a bag in the back of the car. Id. at 15, 20. Agent Mostyn and his passengers followed the Trailblazer until the other units moved in between them. Id. A marked Rutland City Police cruiser entered the caravan and initiated a stop. Id. Agent Mostyn parked nearby with his headlights off, they watched the stop for a period of time, and then Agent Mostyn drove by with his headlights on and the CS again identified Hendrickson. Id. at 16.

Sergeant Matthew Prouty ("Sergeant Prouty"), a Rutland City Police Officer, stopped Hendrickson at approximately 1:35 a.m. on April 2, 2012. Hr'g Tr. at 38. Sergeant Prouty had been advised the red Trailblazer had left Mendon and observed it traveling on Route 4 toward Rutland. Id. at 28. Because it had a loud exhaust, Sergeant Prouty noted a non-moving violation of defective equipment. Id. at 29. However, he also testified he would have pulled over the vehicle regardless of the violation. Id. He approached the driver's side of the Trailblazer and recognized the driver as Courtney Samplatsky but not the passenger, who had a black handkerchief around his neck. Id. at 29-31. Samplatsky provided her license and registration, which Sergeant Prouty verified, and Hendrickson stated he was not Martin Nichols, a fugitive Sergeant Prouty was seeking. Id. at 30-31, 34. Sergeant Prouty was quickly assisted in the stop by ATF Special Agent Thomas Jusianiec

3

("Agent Jusianiec"), ATF Agent Ben Cohen ("Agent Cohen"), and Deputy U.S. Marshal Dan Rullo. Id. at 33.

The three officers had been advised by Agent Mostyn of the information received from the CS and that Mr. Hendrickson was a convicted felon. Hr'g Tr. at 40-41, 43. They had observed the red Trailblazer pass on Route 4, followed it until Sergeant Prouty pulled it over, and assisted in the stop. Id. at 42-43. While Sergeant Prouty verified Ms. Samplatsky's information, Agent Jusianiec talked with her to determine her intentions and whether there was contraband or weapons on her person or in the vehicle. Id. at 43-44, 46. Ms. Samplatsky stated they were going to the "Gut," a lower income neighborhood of Rutland, to meet a friend and refused to consent to a search of her car. Id. at 45. Samplatsky exhibited nervous behavior but provided information regarding their intended actions and denied possession of any contraband or weapons. However, a knife was found on or under her leg. Id. at 44, 46-47. She stated she forgot she had the knife and reiterated there were no other weapons in the car. Id. at 47.

Mr. Hendrickson had voluntarily exited the vehicle but was fidgety and nervous. Hr'g Tr. at 46. When asked what their intentions were, he responded that they were going to Rutland to get something to eat and to meet a friend. Id. at 46. Agent Jusianiec noticed that Samplatsky and Hendrickson mentioned meeting a friend, but referred to different genders. Id. Mr. Hendrickson, who was unarmed, gave the agents consent to search his belongings in the car, a suitcase and a bag in the rear of the vehicle, and no firearms were found. Id. at 48, 56-57. Agent Jusianiec called Agent Mostyn to advise him of the findings of the stop. Id. at 49. At approximately 2 a.m, Agent Jusianiec searched the car and found a loaded silver revolver in the glove compartment and three cell phones, which were also seized. Id. at 49-51, 60. When the gun was found, Ms. Samplatsky stated it was hers, had forgotten it was in the car, and had a bill of sale for it. Id.

at 51. The Agents found a paper in her purse purporting to memorialize a March 25, 2012 private firearm sale. Id. at 52, 66; Hr'g Ex. 5. Hendrickson was arrested and transported to the Rutland City Police Department. Hr'g Tr. at 51. Agent Cohen read him Miranda rights and he signed a written waiver. Id. at 52; Hr'g Ex. 4. Hendrickson also identified a cell phone as his and consented to a search of the phone. Hr'g Tr. at 62-63.

III.    Discussion

The initial burden of production and persuasion generally rests upon the defendant at a suppression hearing. United States v. Arboleda, 633 F.2d 985, 989 (2d Cir. 1980). "The defendant must present a prima facie case showing a Fourth Amendment violation, i.e., that a government official, acting without a warrant, subjected her to either an arrest or a search and seizure." United States v. Bayless, 921 F. Supp. 211, 213 (S.D.N.Y. 1996) (citing cases), aff'd, 201 F.3d 116 (2d Cir. 2000). "[O]nce [the defendant] establishes a basis for his motion, the burden rests upon the [g]overnment to prove, by a preponderance of the evidence, the legality of the actions of its officers." United States v. Wyche, 307 F. Supp. 2d 453, 457 (E.D.N.Y. 2004). Thus, "[w]hen [the government] has acted without a warrant, the ultimate burden of persuasion is then upon the government to show that its evidence is not tainted." Bayless, 921 F. Supp. at 213 (quoting United States v. Bonilla Romero, 836 F.2d 39, 45 (1st Cir. 1987).

The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. This protection extends to vehicle stops. Whren v. United States, 517 U.S. 806, 809-10 (1996). Probable cause or reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for a law enforcement officer to make a traffic stop. United States v. Stewart, No. 07-3003-cr, 2009 WL 37484, at *5 (2d Cir. Jan. 8, 2009). A law enforcement officer may also "briefly detain a person if

5

the officer has a reasonable suspicion 'that criminal activity may be afoot.'" United States v. Bayless, 201 F.3d 116, 132 (2d Cir. 2000) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)).  Reasonable suspicion should be based on specific and articulable facts objectively indicating unlawful conduct. Id. at 132-33 (internal citations omitted).  The Court considers the totality of the circumstances and evaluates those circumstances "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." Id. at 133 (internal citations omitted).

Under the automobile exception to the Fourth Amendment warrant requirement, police may also conduct a warrantless search of a motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime.  United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004) (internal citations omitted).  Probable cause exists if the facts and circumstances are sufficient to lead a person of reasonable caution to believe evidence of a crime will be found in the place searched.  Id. at 456-57 (internal citation omitted).  "[C]ourts recognize that experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not."  Id. at 457 (internal citation omitted).  Certainty is not required; only a fair probability that contraband or evidence of a crime will be found.  Id. (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Finally, once an officer determines there is probable cause to make an arrest, the officer may search the entire passenger compartment to ensure safety and preserve evidence.  Thornton v. United States, 541 U.S. 615, 623 (2004).  When the arrestee is a recent occupant of the vehicle, an officer may search the vehicle incident to the arrest.  Id. at 623-24.

Here, though law enforcement agents acted without a warrant, the traffic stop was justified because Sergeant Prouty had at least a reasonable suspicion of a traffic violation: the loud exhaust which is a defective equipment non-moving violation.  The agents then could briefly detain

Samplatsky and Defendant because, under the totality of the circumstances, they had a reasonable suspicion criminal activity may be afoot. Bayless, 201 F.3d at 132. Agent Jusianiec knew from Agent Mostyn the CS had identified Defendant at the motel and the stop, and that the CS had been communicating with him regarding Defendant committing an armed robbery that night. Based on Agent Jusianiec's experience and training, once he spoke with Samplatsky and Defendant, observed their nervous behavior, found a knife on Samplatsky, and received differing answers from the two regarding their plans and destination, he had reason to believe there might be contraband or evidence of a crime in the car. The totality of the facts and circumstances indicate there was a fair probability that contraband or evidence would be found in the vehicle. Because Defendant was a convicted felon, a firearm is evidence of the crime of possession of a firearm after a felony conviction, 18 U.S.C. § 922(g)(1). Accordingly, the search of the vehicle was supported by probable cause and therefore justified under the automobile exception to the Fourth Amendment warrant requirement.

    Once Agent Jusianiec found the firearm in the glove compartment of the vehicle, he had probable cause to arrest Defendant. It was reasonable for Agent Jusianiec to believe Defendant, the passenger in the car, was committing a crime by possessing a firearm. Because the stop and search of the vehicle comported with the Fourth Amendment, neither evidence nor Hendrickson's statements to police, made after he signed a Miranda waiver form, need be suppressed.

    Defendant also argues the search of his cell phone found in the car was in violation of his Fourth Amendment right to be free from unreasonable searches. (Doc. 13 at 7-8.) He states the police "had no reason to believe that evidence relevant to the crime of arrest would be found in a cell phone." Id. at 8. That claim belies credulity where, in the presence of Agent Mostyn, the CS had engaged in a text messaging dialogue with Defendant regarding committing an armed robbery

7

that night. Accordingly, Agent Jusianiec had probable cause to believe the cell phone contained evidence of a crime, see 18 U.S.C. § 1951(a) (Hobbs Act conspiracy and/or attempted robbery of a narcotics dealer), and, therefore, was justified in seizing the phone. Further, following the seizure of the phone, Defendant does not dispute he gave Agent Jusianiec consent to search the phone.

IV.     Conclusion

For the above reasons, the Defendant's motion to suppress evidence and statements (Doc. 13) is DENIED.

This case will be placed on the January 24, 2013 trial calendar.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 17th day of December, 2012.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge